HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JESSE L. SPENCER,

    Plaintiff,

    v.

MICHAEL J. ASTRUE, in his capacity as Commissioner of the Social Security Administration,

    Defendant.

CASE NO. C10-5661RAJ

ORDER

## I. INTRODUCTION

This matter comes before the court on the Report and Recommendation ("R&R") (Dkt. # 19) of Magistrate Judge Mary Alice Theiler. The R&R recommends that the court affirm the decision of an administrative law judge ("ALJ") and dismiss Plaintiff Jesse Spencer's appeal of the refusal of the Social Security Administration ("SSA") to award him disability insurance benefits. Mr. Spencer has objected (Dkt. # 20) to the R&R, and the SSA has responded. The court has considered his objections, the briefs the parties submitted to Judge Theiler, and the Administrative Record ("AR"). For the reasons stated below, the court declines to adopt the R&R, REVERSES the ALJ's decision, and REMANDS this matter to the SSA for proceedings consistent with this order. The clerk shall enter judgment for Mr. Spencer.

ORDER – 1

## II. BACKGROUND

Mr. Spencer suffers from a variety of medical conditions, including but not limited to a damaged spine, peripheral artery disease, carpal tunnel syndrome and similar disorders of the wrists and hands, diabetes, and sleep apnea. This case focuses on his spinal damage and peripheral artery disease. Nobody disputes that objective medical evidence demonstrates that he suffers from both conditions, and nobody disputes that those conditions cause chronic pain.

Mr. Spencer claims to have been disabled since February 2004, when a car rear-ended him while he was stopped on his motorcycle.[1] Since that accident, Mr. Spencer has been to a medical provider at least once a month. At virtually every visit, his complaint is the same: pain. Usually he complains of pain in his lower back, hips, and legs. More recently, he has also complained of pain in his hands and wrists. He has had at least three surgeries since 2004 to address carpal tunnel syndrome and similar impairments. He has been a regular user of prescription opiates, including methadone and various forms of oxycodone and hydrocodone. Several health care providers who have treated him regularly have remarked that he is dependent on those drugs.

On at least seven occasions since his accident, a medical provider has certified to either private insurers or Washington's Department of Social and Health Services ("DSHS") that Mr. Spencer essentially cannot work. In 2004, the Oregon physician treating him in the aftermath of the accident certified that he could not work. In December 2004, after Mr. Spencer moved to Washington, Dr. Steven Butterfield informed DSHS that Mr. Spencer was unable to work, and could neither stand nor sit for more than 20 to 30 minutes at a time. AR 275. He also explained that part of Mr. Spencer's inability to work was due to his "around the clock narcotic pain management

---

[1] Mr. Spencer was involved in another accident in June 2004 when a car struck him as he walked across a parking lot. In contrast to the extensive documentation of the aftermath of his February 2004 accident, there is little in the record to show what injuries Mr. Spencer sustained in the later accident.

ORDER – 2

for control of his symptoms." *Id.* In February 2005, a nurse practitioner named Kim Anderson filled out the first of several DSHS evaluation forms stating that he was "severely limited" in his ability to work, that he had limited range of motion in his back, and that he could sit for no more than 30 minutes at a time. AR 248-52, 291. Dr. Butterfield reiterated those limitations on the same DSHS form in July 2005. AR 322-27. By July 2006, Mr. Spencer was seeing a new primary physician, Dr. Penny Burdick. When Ms. Burdick first filled out the DSHS form in July 2006, she did not declare Mr. Spencer to be "severely limited," but rather that he was limited to sedentary work. AR 402-05. She did, however, state that he could not sit or stand for more than 30 minutes. *Id.* She also stated her concern that Mr. Spencer's "dependence on opioids for adequate pain control may limit his employability, especially in hazardous work areas." AR 405. Dr. Burdick left the medical practice that Mr. Spencer attended, and nurse practitioner Donna West became his regular medical provider. When she first evaluated him in May 2007, she declared that he was "severely limited" and could not sit or walk for more than 30 minutes at a time. AR 516-18. She also stated that one of the reasons he could not work was his "dependence on narcotics for pain control." AR 519. In May 2008, using the same DSHS form, she declared him merely restricted to "sedentary" work, and stated no specific findings about his tolerance for sitting or standing. AR 508-511. She nonetheless declared him "unlikely to return to the work force due to musculoskeletal limitations and vascular disease." AR 511.

      The only treating health care provider to come to a different conclusion about Mr. Spencer's ability to work was Dr. Burdick. In January 2007, having declared Mr. Spencer unable to work six months earlier, she filled out a different Washington form, this one originating with the Department of Labor and Industries. She declared that he could sit for up to two hours at a time and up to six hours in a workday, that he could stand or walk for up to 30 minutes at a time and up to two hours in a workday. AR 438.

ORDER – 3

When Mr. Spencer appeared before an administrative law judge ("ALJ") in September 2008 for a hearing on his social security disability claim, the ALJ seized on Dr. Burdick's January 2007 evaluation. She asked a vocational expert to opine whether a person with the physical limitations Dr. Burdick stated could perform Mr. Spencer's past relevant work as a car dealership finance manager or loan officer. AR 947-48. The expert opined that Mr. Spencer could work as a finance manager, but that he could not perform past work as a salesman, because that would involve too much walking and standing. AR 948.

The ALJ then asked the vocational expert whether his opinion would be the same if Mr. Spencer's medication "reduce[d] him to the ability to perform certainly not multi-step skilled job instructions, but simpler, repetitive tasks." *Id.* The expert answered neither yes nor no, but testified that his "biggest concern . . . would be the fact of the medication." Rather than determine whether the expert believed Mr. Spencer could perform his past relevant work under the influence of medication, the ALJ simply asked the expert to assume that the medication had no effect. AR 949 ("Okay. All right. So if I give you the same hypothetical, and we are not dealing with the effects of the medication, and [Mr. Spencer] would be able to understand, remember, and follow through on multi-step task job instructions and directions, would that allow for performance of work at the skilled level?"). "I don't see why not," the expert answered. *Id.*

In a November 25, 2008 decision, the ALJ ruled that Mr. Spencer was not disabled. Although she acknowledged many of Mr. Spencer's limitations, she credited Dr. Burdick's January 2007 evaluation as accurately stating the extent to which Mr. Spencer could work. In the ALJ's view, that evaluation, coupled with the vocational expert's testimony, meant that Mr. Spencer could perform his past relevant work.

ORDER – 4

1    In addition to appealing the ALJ's decision to this court, Mr. Spencer apparently
2 filed a new application for disability benefits. This time, he chose an onset date of
3 November 26, 2008, one day after the ALJ's decision. This time, a second ALJ decided
4 that Mr. Spencer was disabled. Jan. 27, 2011 ALJ ruling (Dkt. # 16-1) ("2d ALJ
5 Ruling"). The second ALJ gave "great weight" to Ms. West's opinions, specifically an
6 April 2010 evaluation. 2d ALJ Ruling at 4. The second ALJ's description of Mr.
7 Spencer's medical condition is essentially the same as the first ALJ's description, except
8 that it appears that Mr. Spencer may have undergone a spinal CT scan that revealed
9 degenerative disc disease. *Id.* at 3. The second ALJ also noted that a state examiner had
10 failed to take into account the effect of Mr. Spencer's medication on his ability to work.
11 *Id.* at 4. The second ALJ made no mention of the first ALJ's ruling. The court knows
12 nothing more about Mr. Spencer's second application for benefits, because there is
13 nothing in the record except the second ALJ's January 2011 ruling.

   The R&R recommends that the court affirm the first ALJ's ruling. The R&R
acknowledges that the record would support a decision different than the one the ALJ
reached. It concludes, however, that substantial evidence supported the ALJ's
interpretation of the record.

### III.  ANALYSIS

The R&R accurately summarizes the standard of review applicable to the ALJ's
decision. Briefly, where "substantial evidence" supports an ALJ's factual finding, the
court generally must affirm it. *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1222 (9th Cir.
2009) ("Substantial evidence means more than a mere scintilla but less than a
preponderance; it is such relevant evidence as a reasonable mind might accept as
adequate to support a conclusion.") (citation omitted). In certain circumstances, such as
when an ALJ rejects a claimant's testimony about the severity of his impairments, a
higher standard applies. *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006)

ORDER – 5

1  (requiring "specific, cogent reasons" for rejecting claimant's testimony, and "clear and
2  convincing evidence" where there is no evidence of malingering). The court does not
3  defer to the ALJ's legal conclusions. *Bray*, 554 F.3d at 1222. The court reviews a
4  magistrate judge's R&R de novo. Fed. R. Civ. P. 72(b)(3).

5  The R&R also accurately summarizes the five-step process for determining
6  whether an applicant is disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v),
7  416.920(a)(4)(i)-(v). An applicant is disabled if, for a period of sufficient duration, she
8  can perform neither her past relevant work nor any other substantial gainful activity
9  available in the national economy. In the first step, the applicant must show that she did
10  not engage in substantial gainful activity during a relevant time period. If she did, then
11  she is not disabled. If she did not, then the claimant must show at the second step that
12  she has a "severe impairment" that limits her ability to work. 20 C.F.R. § 404.1520(c).
13  If so, she must show at the third step that over the course of at least a year, her
14  impairment "meets or equals" an impairment listed in applicable regulations. If it does,
15  she is disabled. If not, she must demonstrate at step four that her residual functional
16  capacity ("RFC") is such that she cannot perform her past relevant work. *See* 20 C.F.R.
17  § 404.1520(f) (noting that an applicant who can perform past relevant work is not
18  disabled). If she cannot, then the burden shifts to the SSA to demonstrate that her RFC
19  permits her to perform other jobs that exist in substantial numbers in the national
20  economy. *See Bray*, 554 F.3d at 1223 (describing allocation of burdens in five-step
21  process).

22  **A.   The ALJ Erred By Not Accounting for the Effect of Mr. Spencer's Medication When Determining His Residual Functional Capacity.**

23  The court focuses on the fourth step in this case. The ALJ based her RFC
24  determination on a set of physical limitations that mirrors those that Dr. Burdick
25  identified in her January 2007 evaluation. The parties devote much attention to whether
26  the ALJ properly relied on this opinion, as opposed to any of the other evaluations in the

ORDER – 6

record (including Dr. Burdick's earlier opinion), all of which found Mr. Spencer to be more seriously disabled. The court need not resolve that issue, however, because the ALJ's determination of Mr. Spencer's RFC suffers from a different flaw: it did not properly assess whether Mr. Spencer's pain medication interferes with his ability to work.

There is no dispute that Mr. Spencer has been taking substantial doses of opiates virtually every day since his February 2004 accident. Not surprisingly, several medical providers have noted that he has developed a dependence on those drugs. Some providers have expressed their concerns about this dependence. Dr. Burdick, for example, cautioned Mr. Spencer repeatedly that she would not escalate his pain medication dosage despite his preference to the contrary. *E.g.*, AR 692 ("[H]e verbalizes wanting much stronger meds, but is aware that I am not willing to keep escalating his medications or Rx Oxycontin."). The ALJ found that the record contained evidence of "drug-seeking behavior" and concluded that Mr. Spencer was prone to exaggerate his symptoms. AR 28. The court expresses no opinion on the ALJ's conclusion. It merely notes that even as several medical providers expressed concerns about Mr. Spencer's dependence on opiates, those same providers, along with others, continued to prescribe him opiates for more than four years. If Mr. Spencer was a drug seeker, there is no evidence that he was a drug seeker who used dishonesty or otherwise attempted to conceal his drug dependence from his health care providers.

Whatever inferences one draws from Mr. Spencer's use of opiates, there is no dispute that he had been using opiates, by prescription, for at least four years by the time he appeared before the ALJ. As the court has noted, many of the medical providers who found him unable to work pointed to the drugs' effect as a reason. When Mr. Spencer testified before the ALJ, he stated that the drugs left him in a "dumb daze," AR 930, and that although he was "coherent," he lived in a "semi-daze." AR 931. When the ALJ asked him if he could perform the clerical and administrative duties of his past relevant

ORDER – 7

work in light of the effect of the drugs, Mr. Spencer said that he could not. AR 933. Although Dr. Burdick had opined in her July 2006 evaluation that Mr. Spencer's opiate use could "limit his employability," she did not discuss the drugs' effect in the January 2007 evaluation on which the ALJ relied.

In these circumstances, it was error for the ALJ not to consider the effect of Mr. Spencer's medications on his RFC. The court does not suggest that the ALJ was required to conclude that Mr. Spencer's drug use caused a specific level of impairment. An ALJ must, however, propose hypothetical questions to a vocational expert that include all limitations for which there is substantial support in the record. *Robbins v. SSA*, 466 F.3d 880, 886 (9th Cir. 2006). In this case, the ALJ properly asked the vocational expert whether a person suffering the effects that Mr. Spencer described at the hearing could perform his past relevant work. The record clearly demonstrates that the expert was concerned about this issue, and rightly so, given that he was aware of substantial evidence supporting the assumption that medication limited Mr. Spencer's ability to work. Rather than probing these concerns, the ALJ essentially withdrew her question, asking the expert to assume instead that Mr. Spencer suffered no effect from the medication. This was error. *Id.* ("[I]n hypotheticals posed to a vocational expert, the ALJ must only include those limitations supported by substantial evidence. . . . Conversely, an ALJ is not free to disregard properly supported limitations."). Alternatively, the ALJ could have found that the medical evidence showed that Mr. Spencer was exaggerating the effect of his medications. The court notes, however, that it has come up emptyhanded in its search of the record for evidence that Mr. Spencer could work despite the effect of his medication. Every medical provider to comment on the issue thought that the effect of the medication was a serious concern. On remand, the ALJ must address that concern, and determine how to incorporate Mr. Spencer's

ORDER – 8

medication-induced limitations into his RFC. *Id.* (finding reversible error in failure to pose proper hypothetical to vocational expert).

B.     **The Second ALJ's Decision Provides Another Basis For Remand.**

The court also finds that the second ALJ's decision is an independent reason to remand this case. The court reaches this conclusion reluctantly. It wholeheartedly concurs with Judge Theiler's observation that Mr. Spencer raised no particular argument about the effect of the second decision. Instead, he used his opening brief and his reply brief to point out the existence of the second decision, and claim (without citing a single word from the decision, case law, or anything else) that the decision was a ground for remand. Only in his objection to the R&R did Mr. Spencer cite case law for the first time.

In *Luna v. Astrue*, 623 F.3d 1032 (9th Cir. 2010), the court similarly confronted a second favorable decision from a different ALJ as it reviewed a first ALJ's unfavorable decision. As in this case, the second claim relied on a disability onset date one day after the first ALJ's unfavorable decision. *Id.* at 1034. Unlike this case, the parties in *Luna* agreed that the court should remand the first decision for further consideration in light of the second decision. *Id.* In *Luna*, the district court found that the "disability based on [plaintiff's] second benefits application was new and material evidence warranting remand for further factual consideration because it commenced at or near the time [plaintiff] was found not disabled based on the first application." *Id.* The Ninth Circuit agreed, although it declined to rule that the second decision mandated that the first application be granted. *Id.* at 1034-35 (remanding case).

It is more difficult for this court to reach the conclusion that the second ALJ's decision in this case constitutes new and material evidence. Mr. Spencer failed to provide any portion of the record supporting his second application. It is apparent from the second ALJ's decision that she considered medical evidence from treatment occurring

ORDER – 9

after the first ALJ's decision.  It is also possible that Mr. Spencer has now been diagnosed with degenerative disc disease, a diagnosis which might help explain the severity of his pain.  It is also possible that the second ALJ looked at essentially the same evidence as the first ALJ and weighed the evidence differently.  The court is left to speculate, because Mr. Spencer has wholly failed to explain the circumstances underlying his second application for benefits.  Nonetheless, because the court is remanding this action for other reasons, it directs the SSA to reconsider Mr. Spencer's benefits application in light of his subsequent successful application.

C.     **The Court Declines to Decide Whether Substantial Evidence Supported The Remainder of the ALJ's Findings.**

In light of its decision to remand this action on the grounds identified above, the court need not decide whether substantial evidence supports the ALJ's decision to credit Dr. Burdick's January 2007 evaluation while disregarding contrary evidence from other treating medical providers and Mr. Spencer himself.  The R&R declares that substantial evidence supported this decision, even as it acknowledges that a different judge might have come to a different conclusion.  The court agrees that this is a case in which the medical evidence is subject to different interpretations.  It declines to offer the conclusions it would have reached after reviewing the same record.

The effect of the court's ruling today is to vacate the ALJ's findings pending reconsideration of Mr. Spencer's initial application in light of the decision on his second application and this court's directive to address the effect of Mr. Spencer's medication on his ability to work.  That means that the SSA (or the ALJ, if a new hearing is conducted) must reconsider all of the evidence.  That may lead to a different decision, and it may also lead to different subsidiary findings as to Mr. Spencer's credibility and the credibility of his medical providers.

ORDER – 10

## IV. CONCLUSION

For the reasons stated above, the court declines to adopt the R&R (Dkt. # 19) except as stated in this order, and sustains Mr. Spencer's objections to the R&R (Dkt. # 20) to the extent stated in this order. The court reverses the ALJ's decision and remands this action to the SSA for further proceedings in accordance with this order. The court directs the clerk to enter judgment for Mr. Spencer.

DATED this 26th day of September, 2011.

*Richard A. Jones*

The Honorable Richard A. Jones
United States District Court Judge

ORDER – 11